## Wyoming Construction Company and Frederick S. Koons, to use of John W. Best, v. Franklin Trust Company.

*Paul Reilly*, for use-plaintiff; *Edward H. Cushman*, for defendant.

BROWN, JR., J., April 17, 1929.—This is a motion by defendant for judgment *non obstante veredicto*. At the conclusion of the testimony it was agreed that there were no disputed questions of fact to be passed upon by the jury and that binding instructions should be given either in favor of plaintiff or defendant. Not having had opportunity to read the several contracts upon which the determination of the case depends, and simply for the purpose of having the damages fixed, the trial judge directed a verdict in favor of plaintiff in the amount of $3067.

On April 25, 1919, the Wyoming Construction Company, being the owner of forty-one lots of ground in Philadelphia, entered into a written agreement with the Franklin Trust Company, the defendant, whereby the construction company was to erect a dwelling-house on each lot and the defendant was to insure titles, guarantee completion and, to that end, receive all moneys on account thereof and dispense same in accordance with the provisions of said agreement.

On June 6, 1919, the construction company entered into agreement in writing with Samuel T. Hall, Inc., whereby the former agreed to sell and Hall agreed to purchase the aforesaid lots with the dwelling-houses in course of erection thereon, the agreement providing that the construction company was to "fully finish and complete" the houses and that certain of the proceeds from the resale thereof should be deposited with the defendant, which was to issue policies of insurance against failure to erect the houses in compliance with the plans and specifications and against mechanics' claims.

On July 1, 1919, the construction company delivered to J. Anderson Ross Company an order on defendant, directing it to pay that company the sum of $5500 out of the moneys coming into its hands from the sale or mortgage of the premises; and then, on July 3, 1919, authorized defendant in writing to pay John W. Best, assignee of Frederick S. Koons, $2000 "out of the proceeds of the sale" of the aforesaid properties to Hall upon settlement under the terms of the agreement of sale of June 8, 1919. Defendant acknowledged receipt of this assignment, endorsing thereon "without any obligation to itself." The assigned claim was for services rendered by Koons to the construction company in procuring the sale of the properties to Hall.

Defendant received as the net cash proceeds of the sale of the said forty-one properties to Samuel T. Hall, Inc., the sum of $53,683.30, which was mingled

with other moneys received on account of the operation, and paid to the Wyoming Construction Company from July 3, 1919, to Jan. 16, 1920, that is, subsequent to the assignment to the use-plaintiff, sums aggregating $18,504.60 for carpenter work, cement work, plastering, lumber, grading and labor. Defendant has in its hands, as net proceeds of the operation, the sum of $521.45, and there being still due and unpaid to J. Anderson Ross Company the sum of $1800 on account of the aforesaid assignment of $5500, which was prior to that of the use-plaintiff, prevents the latter from receiving anything on account of the assignment to him unless the aforesaid payments to the construction company were made improperly.

The question for determination is whether defendant had the right to pay directly to the construction company what the latter spent in the construction of the houses instead of paying its assignee, the use-plaintiff, the $2000 under the assignment of July 3, 1919.

Plaintiff's position is that defendant, under the contract of April 25, 1919, had no right to make any payments directly to the construction company, contending that there was no provision authorizing it to do so except after all payments therein provided for were made; that there was no provision for payment to the construction company to repay it for bills paid on the operation, it being the latter's duty to pay its own bills. However, the contract provides in paragraph 10 that the defendant "shall have the right to use any funds or securities in its hands belonging to the said operation, or otherwise, to secure the completion of said buildings, and to pay the debts thereof," and in paragraph 12 that all moneys received on account of the operation "shall not . . . be liable to attachment or garnishment at the suit of any creditor" of the construction company, "said moneys being hereby specially and irrevocably appropriated and applied to the protection of the trust company against loss of any kind in connection with the said operation and to the payment of debts contracted in and about the erection and construction of the said buildings and the expense incident thereto." These provisions authorized defendant, in order to protect itself, to use the funds coming into its hands to secure the completion of the houses and to pay the debts thereof. Among such debts were those of the construction company for work done and materials furnished. There was no provision prohibiting payments directly to the latter, and as moneys coming into the defendant's hands on account of the operation were appropriated and applied to its protection "against loss of any kind" and for the payment of debts contracted in the erection of the houses, the payments to the construction company were properly made.

Paragraph 13 provides that defendant shall pay out the moneys deposited with it "directly to the several contractors and materialmen for work actually done and materials actually furnished" in the construction of the houses, and no part of the moneys shall be drawn by the construction company, "either directly or indirectly, for his own use until the full completition of the buildings," free from all mechanics' claims or liens, and until the defendant is "fully and wholly relieved from all loss or liability on account of any obligations issued by it or otherwise in connection with the said building operation." Then, by paragraph 18 *(g)*, the construction company, "or such other person or persons as it shall in writing designate," is entitled to "any balance remaining out of any funds coming into the hands of" defendant *only* "after the buildings shall have been fully finished and completed" and defendant "shall have been discharged of and from all liability or liabilities by reason of policies, indemnities, guarantees or other undertakings issued by it, or by reason of any other liability growing out of the operation and after all debts incurred

in and about the erection and construction of the said buildings shall have been paid." Thus, until the houses had been fully completed, free from all claims and liens, and until defendant was entirely relieved from all liability, neither the construction company nor its nominee was entitled to any of the funds in defendant's possession. True, the construction company did receive certain sums from defendant, but they were for the purpose of relieving the latter from "liability growing out of the operation" by securing the completion of the houses. If "all debts incurred in and about the erection and construction" of the houses had not been paid, there would have been no balance available for payment to the construction company or its nominee, the use-plaintiff.

There is a further provision in paragraph 18 (g) that no payments shall be made to the construction company or its nominee "until all sums due the trust company shall have been paid in full and all liability on account of policies, guarantees, indemnities or other letters issued by the said trust company, or otherwise, shall, in the opinion of the said trust company, have ceased." This empowered defendant to determine, in its own opinion, whether its liability under the contract had ceased. So long as debts incurred in the completion of the buildings remained unpaid, its liability continued, and, to relieve itself of this, it saw fit to pay the construction company for labor and material actually furnished. Until such debts were paid, defendant was not relieved of its obligations, and, hence, no payments could have been made to use-plaintiff, the nominee of the construction company.

Defendant's contention is that so long as the funds were used for labor and material to complete the operation, the identity of the person to whom such payments were made is not important. This is the view we take, because the moneys received on account of the building operation were expressly appropriated and applied to the payment of labor and material in the erection, construction and completion of the houses. The sums paid to the construction company were for that purpose: for labor and material which had been actually furnished and delivered upon vouchers signed and countersigned in accordance with the provisions of the contract. They were, as the contract provided, to secure completion of the houses and not for the construction company's "own use."

Where funds are deposited for the payment of specific claims, such as labor and materials, there is an appropriation or pledge that they be used for such special purpose which places them beyond the grasp of the contractor or one attempting to attach: Willis v. Curtze, 203 Pa. 111; Austin-Nichols & Co. v. Union Trust Co., 289 Pa. 341. Here the moneys were deposited with defendant to secure the erection and completion of the houses. The construction company had no beneficial interest therein until after the obligations of the building operation, assumed by the defendant, were satisfied. The moneys received could not be applied to general purposes of the construction company, but only for the completion of the houses, as was actually done. Defendant was obliged to make payments in accordance with the provisions of the contract which authorized it to pay all debts of the operation. It was only in case of a balance remaining after "all debts incurred in and about the erection and construction of the said buildings shall have been paid" that the construction company was entitled to any moneys for its own use. The funds received from the operation were pledged for the specific purpose of assuring its completion, and until this purpose had been accomplished, neither the construction company nor its assignee was entitled to part thereof. Neither had right to payment until the defendant had discharged itself of its liabilities.

This it did by paying the construction company for labor and materials, and to have first honored the order by the construction company in favor of this assignee would not have relieved defendant from obligations which, by the contract, it had expressly undertaken, but would have diverted the funds in its hands from payment of the specific claims for which they had been appropriated.

The test is not to whom the money was paid, but the purpose for which it was paid. The assignee or use-plaintiff stands in the same position as its assignor, the construction company. The latter had no right to receive any part of the moneys in defendant's hands for its own use until the completion of the houses and the payment of the debts incident thereto, for which they had been specifically appropriated. What it did receive was in payment of such debts, that is, for labor and material actually furnished to the operation. The assignment by the construction company to the use-plaintiff was not for material and labor, but for services in connection with the sale of the properties.

Accordingly, defendant's motion for judgment *n. o. v.* is granted, and judgment is now entered in favor of the defendant.